BOARD OF EDUCATION, KENTON CITY SCHOOLS *v.* DAY ET AL.

(No. 86-040—Decided July 15, 1986.)

Court of Common Pleas of Hardin County.

*Paul N. McKinley, Jr.,* law director, for plaintiff.

*Faulkner, Faulkner & Rapp* and *John B. Neville,* for defendant.

DOWD, J. This is a proceeding wherein the plaintiff, Board of Education of the Kenton City School District, requests, among other things, a declaratory judgment to the effect that defendant Susan J. Day, the custodial parent of Anissa Schodorf and Molly Schodorf, is not a resident of the Kenton City School District within the meaning of R.C. 3313.64. If Mrs. Day is not a resident of the Kenton City School District within the meaning of R.C. 3313.64, Anissa and Molly are not entitled to attend the Kenton city schools without paying tuition therefor. If, on the other hand, Mrs. Day is a resident of the Kenton City School District, as she contends, then Anissa and Molly are legally entitled to attend the Kenton city schools without paying tuition.

### Findings of Fact

The parties have stipulated as to the facts of the case, from which the court adopts the following as its findings of fact.

On August 30, 1984, Susan J. Schodorf, the natural mother and custodial parent of Anissa, Molly and Mindy Schodorf, married Byron C. Day. Thereafter, Mrs. Day and the three children established their residence with Mr. Day at 19235 Township Road 197, Mount Victory, Ohio. The Day home on Township Road 197 is located in the Ridgemont Local School District.

Mindy Schodorf entered the Ridge-

mont Local School District in the fall of 1984. At the same time, Mrs. Day agreed to pay tuition so that Anissa and Molly Schodorf might enroll in the Kenton City School District. In August 1984, at a meeting with one or more Kenton city school officials, it was suggested to Mr. and Mrs. Day that they might avoid the payment of tuition if they would establish a residence within the Kenton City School District, perhaps by renting an apartment.

The Days took no immediate action in response to this suggestion but, in March 1985, they purchased an apartment building at 222 East Carrol Street, Kenton, which is within the Kenton City School District, and furnished one of the three apartments in the building for their personal use. The Days then notified the Kenton city schools that they had established a residence within the Kenton City School District and, beginning the following month, in April 1985, Anissa and Molly were permitted to attend the Kenton city schools without paying tuition.

In October 1985, Dr. Charles Taylor, the new Superintendent of the Kenton city schools, wrote to Mrs. Day in an attempt to clarify whether she had established a residence in the Kenton City School District within the meaning of R.C. 3313.64. With his letter, Superintendent Taylor enclosed a questionnaire wherein he asked Mrs. Day to indicate whether her residence was "outside" or "within" the Kenton City School District. On October 10, 1985, Mrs. Day returned the questionnaire, indicating that she maintained one residence "outside" the Kenton City School District and another residence "within" the Kenton City School District. In a notation at the bottom of the questionnaire, Mrs. Day stated, "We currently own a horse farm in Mt. Victory where we reside part time."

In subsequent correspondence and discussion, Superintendent Taylor and Mrs. Day were unable to resolve the question of residence to the satisfaction of Dr. Taylor. The Kenton City Board of Education then initiated the present legal proceeding in an effort to determine whether 222 East Carrol Street, Kenton, is the residence of Mrs. Day within the meaning of R.C. 3313.64.

It is undisputed that Mr. and Mrs. Day have furnished one of the three apartments at 222 East Carrol Street, Kenton, for the family's personal use. Anissa and Molly go to the apartment every day after school or, if the girls participate in after-school activities, they go to the apartment at the conclusion of the activities. Anissa and Molly eat evening meals in the apartment as necessary and Mrs. Day has sometimes joined them on those occasions. Now and then, one or more members of the family will spend the night at the apartment.

Mrs. Day and her children, however, spend almost every night in Mt. Victory, beginning the day there and ending it there. They all eat breakfast and most evening meals there. Either Mr. or Mrs. Day will drive Anissa and Molly to Kenton for school in the morning and pick them up in Kenton after school or school activities let out at night. The Day family spends very little time in the apartment over the weekend. Mindy continues to attend the Ridgemont Local School District without paying tuition.

## Conclusions of Law

The applicable statute is R.C. 3313.64(B)(1) which provides that "[a] child shall be admitted to the schools of the school district in which his parent resides." Also relevant is the definition of "parent" contained in R.C. 3313.64 (A)(1), wherein it states that " 'parent' means either parent, unless the parents are separated or divorced or their marriage has been dissolved or annulled, in which case 'parent' means the custodial parent." Clearly, Mrs. Day is the

"custodial parent" of Anissa and Molly Schodorf.

The pivotal questions, then, are: What constitutes a parent's residence? And, is it possible for a parent to have more than one residence?

There apparently has been no published judicial opinion on this subject since 1971. The language contained in R.C. 3313.64 as it reads today (and was quoted above) is not identical to that which the court construed in that 1971 opinion. As pertinent, R.C. 3313.64 formerly read: "School residents shall be all youth who are children or wards of actual residents of the school district." The language contained in the earlier version of R.C. 3313.64 is sufficiently similar to the present language, however, that the court need not hesitate in relying on the decision in *Baucher* v. *Bd. of Edn.* (1971), 31 Ohio Misc. 49, 58 O.O.2d 387, 277 N.E.2d 92, or on an earlier decision in *Bd. of Edn.* v. *Dille,* (1959), 109 Ohio App. 344, 11 O.O.2d 139, 165 N.E.2d 807.

In *Bd. of Edn.* v. *Dille,* the Oakwood City School District sought to collect tuition from one Dr. Dille, who claimed that 136 Far Hills Avenue, Oakwood, was his legal residence and that his daughter, Carol, was entitled to attend the Oakwood city schools without paying tuition. The Court of Appeals for Montgomery County found as fact that Dr. Dille had been born at 136 Far Hills Avenue, had lived there for much of his life, and had purchased his mother's interest in the house and its contents upon his father's death. Dr. and Mrs. Dille received mail at 136 Far Hills Avenue and used the address as their voting residence and also as the address from which they filed their personal property tax returns. Dr. Dille was present at 136 Far Hills Avenue at least once each day, often ate meals there, and occasionally slept there. Daughter Carol attended her grandmother, who lived at 136 Far Hills Avenue. Carol prepared her grandmother's lunch and dinner, often stayed overnight, helped her grandmother with the cleaning, ordered her groceries, and spent roughly one third to one half of her time there.

It was undisputed that Dr. and Mrs. Dille also owned another residence, where Mrs. Dille and six children resided, and where Dr. Dille almost always spent the night. Nevertheless, the court held that Dr. Dille was an "actual resident of 136 Far Hills Avenue," even though he also was an "actual resident" at another address, in another school district. The court stated, at paragraph one of the syllabus, that "[a] person * * * may have more than one legal residence," and then added, at 349, 11 O.O.2d at 142, 165 N.E.2d at 811:

"He [Dr. Dille] was physically present and living there [136 Far Hills Avenue] as a householder during significant parts of each day and for important purposes consistent with residence. There was no subterfuge, and nothing temporary or accidental about such residence. His roots there were deep, permanent, present and substantial."

The second decision, in *Baucher,* involved a rather unusual set of facts, in that the Baucher family owned and utilized houses on both sides of a road — one house lying in the Coldwater Exempted School District and one lying in the Southwest Local School District. After discussing at length the particular facts of the case, which this court need not recite, the Court of Common Pleas of Mercer County concluded, at 54, 58 O.O.2d at 389-390, 277 N.E.2d at 96:

"* * * [I]n the instant case the north and south houses are operated as a family unit. The north house serves as the family sleeping quarters or a dormitory. The south house serves as the place where the main meals are prepared and eaten and the place where the family laundry is done. It would be impossible for the plaintiffs' family to live under present conditions without using both

the north house and the south house. Together, they constitute the home or dwelling place of the plaintiffs' family.''

As these cases make clear, it is possible for an individual to have more than one residence but one cannot establish a residence merely by purchasing a house or apartment building or even by furnishing such a house or apartment so that it is suitable for the owner's use. ''Residence'' involves something more. It must be a place where important family activity takes place during significant parts of each day; a place where the family eats, sleeps, works, relaxes, plays. It must be a place, in short, which can be called ''home.''

In examining these criteria, it is clear to the court that Mrs. Day and her children have not established a residence at 222 East Carrol Street within the meaning of R.C. 3313.64. It is not enough that the children spend some time there each day after school, or that they occasionally eat a meal there. It is significant that Mrs. Day spends little or no time at the apartment, that she takes no meals there, that neither she nor the children sleep there, and that there is no evidence that important family activity occurs there during significant parts of each day. It is impossible to say in this case, as the court did in *Dille,* that Mrs. Day's roots at 222 East Carrol Street are ''deep, permanent, present and substantial.'' They clearly are not. Nor can it be said in this case, to paraphrase the court in *Baucher,* that it would be impossible for the Day family to live without using both the apartment and the house on Township Road 197. The outcome of this case might have been different if, for example, Mrs. Day and her daughters actually lived in the Carrol Street apartment from Monday through Friday, and utilized Mr. Day's ranch home as only a weekend retreat. But they did not.

### Decision

The court finds that 222 East Carrol

Street, Kenton, is not the residence of Susan J. Day within the meaning of R.C. 3313.64.

*Judgment accordingly.*